HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ABRAHAM MONDRAGON,<br><br>  Defendant. | CASE NO. 10-CR-5220-RBL<br><br>ORDER<br><br>[Dkt. #173, 174] |

THIS MATTER is before the Court on the Defendant's Double Jeopardy and Prosecutorial Vindictiveness Motions. The issues arise out of a practice in the Western District of Washington under Local Rule 17.2 that permits settlement judges to help during plea negotiations. At Defendant Abraham Mondragon's trial, the jury was selected and sworn before Mondragon requested a settlement conference under Local Rule 17.2. Judge Settle granted Mondragon's request and obtained the assistance of Judge Martinez—the settlement judge Mondragon requested. The settlement conference took place during the lunch hour and resulted in Mondragon pleading guilty to all six counts charged in the Superseding Indictment. Because of the change of plea, Judge Settle declared a mistrial with the consent of both parties.

1  Three weeks later, Mondragon attempted to withdraw his plea, arguing that he felt
2  pressured into it and that he had misunderstood some of Judge Martinez's points. Judge Settle
3  denied the request and imposed a twelve-year sentence. Mondragon appealed, arguing that
4  Local Rule 17.2 violates Federal Rule of Criminal Procedure 11(c)(1), and as a result, his guilty
5  plea was invalid. The government filed a motion requesting that, instead of deciding the case on
6  the merits, the Ninth Circuit remand the case because both parties were seeking the same
7  remedy. The parties mediated and filed a joint motion asking the Ninth Circuit to remand the
8  case, which was granted. Shortly after the plea agreement was rescinded, the Government
9  obtained a Second Superseding Indictment, adding two additional counts.

10  Mondragon now requests that the Court dismiss the case on double-jeopardy grounds,
11  arguing that jeopardy attached when the jury was sworn and that he could not consent to the
12  mistrial because Local Rule 17.2 violates Rule 11. He also argues that the Second Superseding
13  Indictment represents a vindictive prosecution—adding additional charges in retaliation for Mr.
14  Mondragon's appeal. For the reasons stated below, the Motion to Dismiss on Double Jeopardy
15  Grounds [Dkt. #173] is DENIED. The Motion to Dismiss the Second Superseding Indictment
16  [Dkt. #174] is GRANTED in part. The two new counts will be dismissed; the rest of the
17  Indictment will remain intact.

## I. BACKGROUND

19  Defendant Abraham Mondragon was arrested in March 2010, and charged with one count
20  of possession with intent to distribute a substance containing methamphetamine, in violation of
21  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Before trial, the Government obtained a Superseding
22  Indictment charging Mondragon with six counts: two counts of distribution of

methamphetamine;[1] two counts of distributing a substance containing methamphetamine;[2] one count of possession of methamphetamine with intent to distribute;[3] and one count of possession of a firearm in furtherance of drug trafficking.[4] Between the indictment and the trial, Mondragon requested two plea hearings, but later cancelled both.

On the first day of trial, shortly *after* a jury was empanelled, Mondragon requested a settlement conference under the Western District of Washington Local Rule 17.2.

Under Local Criminal Rule 17.2, either party may request the assistance of a non-presiding judge to facilitate the conference:

> (a) **Policy**: It is the policy of the court to facilitate efforts to settle criminal cases, when requested to do so by the parties. Participation in a settlement conference is entirely voluntary, however. . . .
> (b) **Role of Settlement Judge**: The role of the settlement judge shall be limited to facilitating a voluntary settlement between parties in criminal cases. The settlement judge shall not preside over any aspect of the case, other than facilitation of a voluntary settlement according to this rule. . . . He or she shall not communicate anything regarding the status or substance of the settlement discussions to the trial judge . . . .
> (c) **Request for Settlement Conference**: A request for a settlement conference may be initiated by the parties. The trial judge shall determine whether such conference shall be held. . . .

W. D. Wash. Local Crim. R. 17.2(a)–(c). Thus, a trial judge determines both whether a settlement conference will be held and who will act as settlement judge, under advisement from counsel.

In this case, Judge Settle granted Mondragon's request. Mondragon and his counsel *specifically* requested Judge Martinez, who agreed to participate via telephone during the lunch break. The parties reached a plea agreement.

Under the agreement, Mondragon pled guilty to all six counts. Both parties agreed that a 12–17 year sentence was appropriate, but Mondragon acknowledged that no one guaranteed

---

[1] In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).
[2] In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).
[3] In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).
[4] In violation of 18 U.S.C. § 924(c).

what sentence the court would ultimately impose. (Dkt. #124 at 6, 9.) As part of the plea agreement, the Government agreed not to prosecute the defendant for any "additional offenses known to it as of the time of [the] Agreement." The agreement also stated that Mondragon agreed that if he breached the agreement, the Government could prosecute Mondragon "for all offenses for which the United States has evidence." (*Id*. at 10.) The Government did not mention any specific offenses that Mondragon might be charged with if he breached. If the court imposed a sentence that was within or below the sentencing guideline range, Mondragon agreed to waive any right to appeal the sentence.[5]

Judge Settle reviewed the terms of the plea agreement with Mondragon and verified that Mondragon waived his rights voluntarily. (Dkt. #127.) During the plea colloquy, Mondragon expressed that he felt "pressure" to enter the agreement because of the number of years he was facing. (Dkt. #127, 10–11.) In response, the Court inquired further: "I understand that there's lots of pressure . . . What I'm trying to drive at here and understand is, are you making this waiver of the rights voluntarily, or is somebody threatening you or anyone close to you to get you to do it?" Mondragon responded that he waived voluntarily. (Dkt. #127 at 11.) The court found that Mondragon voluntarily waived all of his rights but deferred entering the guilty plea until sentencing. With the ***advice and consent*** of both parties, the court declared a mistrial.

Three weeks after pleading guilty, Mondragon sought to withdraw his pleas. He argued that he felt pressured into pleading guilty and did not understand one of Judge Martinez's points. The court held an evidentiary hearing and denied the motion. The court concluded that there was

---

[5] Mondragon also waived (1) the right to plead guilty; (2) the right to a speedy and public trial before a jury of peers; (3) the right to effective assistance of counsel at trial; (4) the right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial; (5) the right to confront and cross-examine the witnesses; (6) the right to compel or subpoena witnesses to appear at trial; (7) the right to testify or the right to remain silent; and (8) the right to appeal a finding of guilt. (*Id*. at 5.)

"no competent evidence that Defendant was actually confused about the Government's promises." (Dkt. #131 at 4.) The court noted that Mondragon was "not a stranger to the plea agreement process," referring to Mondragon's two cancelled plea hearings.[6] (*Id.*)

The court ultimately sentenced Mondragon to 12 years—the minimum agreed to in the deal. Mondragon appealed, arguing that Judge Martinez's participation in the settlement conference violated Fed. Crim. R. 11, which bars "the court" from participating in a settlement conference: "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The Court must not participate in these discussions." In short, the Western District of Washington has interpreted "the court," as used in Rule 11, to mean ***the presiding judge***, whereas Mondragon argues that "the court" means ***all federal judges***.

Importantly, Mondragon has never alleged any specific impropriety in Judge Martinez's participation. He does not identify any way in which his plea agreement would have been different had Judge Martinez not participated. Thus, Mondragon argues that Judge Martinez's participation, and Local Rule 17.2, are *per se* violations of Rule 11.

On appeal, the Government argued that Mondragon had breached his plea agreement and sought remand. After working with a Ninth Circuit mediator, both parties filed a joint motion to remand the case. The Ninth Circuit remanded "in light of the parties' current positions." The court did not reach the merits.

When the case was remanded, a new prosecutor, Mr. Jennings, assumed control of the case. He obtained a Second Superseding Indictment, which added a conspiracy count and a count of maintaining a drug premises near an elementary school.

---

[6] The court also acknowledged the many scheduling difficulties this case presented "with seven different trial dates and three defense attorneys being appointed at Defendant's request." (Dkt. #131 at 5.)

1   Mondragon now seeks dismissal on double-jeopardy grounds. Mondragon argues that

2   Local Rule 17.2 constitutes *per se* "judicial goading," and thus, his consent to the mistrial is

3   invalid—even though Mondragon specifically requested Judge Martinez's participation and does

4   not suggest that Judge Martinez engaged in any action during the settlement conference that

5   amounted to judicial goading. The Government argues that Mondragon not only consented to

6   the mistrial, he requested the settlement conference that directly led to the mistrial.

7   Mondragon also seeks dismissal based on prosecutorial vindictiveness. He argues that

8   the additional charges are retaliatory following what he describes as "winning" the appeal. The

9   Government responds that Mondragon had no right to breach the plea agreement and that the

10  Defendant was on notice that additional charges could be filed if the plea failed. The

11  Government also disagrees that Mondragon "won" the appeal, noting that Mondragon did not

12  win on any substantive claims.

13  **II.    DISCUSSION**

14  **A. Double Jeopardy**

15  The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from

16  repeated prosecutions for the same offense. A criminal defendant has a protected interest and a

17  "valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy*, 456 U.S.

18  667, 673–674 (1982) (internal quotation omitted). Thus, "the federal rule that jeopardy attaches

19  once a jury is impaneled and sworn is of constitutional dimension." *Bretz v. Crist*, 546 F.2d 1336,

20  1340 (9th Cir. 1976) (internal citations omitted). But whether jeopardy has attached does not

21  end the inquiry.

22  When determining whether retrial is barred, Supreme Court jurisprudence balances the

23  interests of a criminal defendant against the societal interests in the sound administration of

24

justice. *Lockhart v. Nelson*, 488 U.S. 33, 38–39 (1988) ("Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.") (citing *United States v. Tateo*, 377 U.S. 463, 466 (1964)). Thus, "[o]nce jeopardy has attached, there are generally three ways that a criminal defendant in federal court can be retried for the same offense." *United States v. Alvarez-Moreno*, 657 F.3d 896, 899 (9th Cir. 2011). First, a defendant may be retried after a successful appeal or collateral attack. *Id*. Second, a defendant may be retried if the district court validly grants a defendant's motion under Rule 33 for a new trial. *Id*. at 901. Finally, a defendant may be retried if the district court validly declares a mistrial. *Id*. at 900.

If the district court declares a mistrial, the defendant may be retried only if "(1) the mistrial was justified by "manifest necessity" or was consented to by the defendant, and (2) there was no judicial or prosecutorial overreaching aimed at triggering the mistrial." *Id*. at 900. Under that standard, "only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy*, 456 U.S. at 674 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)). "[T]he Supreme Court [has] expressly rejected the idea that double jeopardy would bar retrial when mere bad faith conduct or harassment on the part of the judge or prosecutor provoked the defense to ask for a mistrial." *United States v. Lopez-Avila*, 678 F.3d 955, 962 (9th Cir. 2012) (internal quotations omitted).

Mondragon argues that any judge facilitating a settlement pursuant to Local Rule 17.2 is a direct violation of Rule 11 and is per se "judicial goading." Whether Local Rule 17.2 violates

Rule 11 is an issue of first impression. Rule 11 states that "the court" must not engage in plea discussions. In order to decide whether the local rule violates Rule 11, the Court must determine whether "the court" refers to the presiding judge or all federal judges.

The plain language of Rule 11 cannot resolve the meaning of "the court." Common sense might suggest that "the court" refers to the presiding judge because the court almost never refers to itself as a particular judge. Additionally, Federal Rule of Criminal Procedure 2 offers some guidance on interpretation of Rule 11: "These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." This Court is guided by common sense, Ninth Circuit precedent, and policy, which all suggest that "the court" is the presiding judge and not all federal judges.

When the Rules Committee adopted Rule 11(c)(1) in 1974, the rules committee attempted to "make[] clear that *the* judge should not participate in plea discussions leading to a plea agreement." [7] Notes of Advisory Comm., FED. R. CRIM. P. 11, 1974 Amend. One reason that the Committee did not want judges to participate in settlements was that "it might lead the defendant to believe that he would not receive a fair trial, were there a trial before the *same* judge." *Id*. (emphasis added). The committee also noted that the judge's involvement might make it difficult to "objectively assess the voluntariness of the plea." *Id*. Nothing in the language of the notes supports a conclusion that "the court" referred to all of the federal judges.

Additionally, although the Ninth Circuit has not addressed Local Rule 17.2, it has implicitly held that the use of a settlement judges in settlement proceedings does not violate Rule 11. *See United States v. Scolari*, 72 F.3d 751 (9th Cir. 1995) ("This court previously approved

---

[7] The rule was originally Rule 11(e)(1).

the participation by a settlement judge in plea negotiations."); *United States v. Torres*, 999 F.2d 376 (9th Cir. 1993). In *Torres*, the parties used a district court judge to discuss a proposed plea agreement before conveying the agreement to the sentencing judge pursuant to the Southern District of California local rules. *Torres*, 999 F.2d at 377. When the agreement was presented to the sentencing judge, the judge opined that the agreement did not "shock him." *Id*. The defendant argued that the sentencing judge's statements violated Rule 11 and that he would not have agreed to the plea if the judge had not offered his seal of approval. *Id*. at 378. The Ninth Circuit disagreed, reasoning that the *sentencing* judge "did not participate in plea bargaining." *Id*. The court noted that the presentation to the sentencing judge just before the change of plea hearing "was simply the next step" according to the procedure. *Id*.

Similarly, in *Scolari*, the parties used a settlement judge pursuant to the rules in the Southern District of California to enter a plea agreement. *Scolari*, 72 F.3d at 751. When the defendant appealed, the court concluded that the defendant had waived his right to appeal because the sentence was within the guidelines range. *Id*. at 753. The court reasoned that there was no claim that the waiver of rights was involuntary, and noted that criminal defense lawyers generally endorse allowing settlement judges to facilitate a settlement conference. *Id*. The court recognized that defense counsel felt that the procedure "is a protection of the right of the defendant to voluntarily explore settlement without compromising the defendant's rights or the actions of the court." *Id*. The court also addressed *Torres*. "In that case, we were careful to point out that the sentencing judge there, as here, did not participate in any plea bargaining. [The defendant] makes no contention that he was in any way coerced to enter into his plea agreement." *Id*.

In fact, the Advisory Committee on the Federal Rule of Criminal Procedure responded to the Ninth Circuit practice of using settlement judges for plea agreements in a 2002 comment. Notes of Advisory Comm., FED. R. CRIM. P. 11, 2002 Amend. ("The Committee considered whether to address the practice in some courts of using judges to facilitate plea agreements."). The Committee cited *Torres* and noted that "[s]ome courts apparently believe that [the language of the rule] acts as a limitation only upon the judge taking the defendant's plea and thus permits other judges to serve as facilitators for reaching a plea agreement between the government and the defendant." *Id*. However, the Committee specifically "decided to leave the Rule as it is with the understanding that doing so was in no way intended either to approve or disapprove the existing law interpreting that provision."

Based on this Ninth Circuit precedent, Rule 11's reference to "the court" simply cannot mean all federal judges. Rule 11 only prohibits the presiding judge from engaging in plea discussions. The only question left is whether Local Rule 17.2 violates Rule 11.

Under the Local Rules, "[i]t is the policy of the court to facilitate efforts to settle criminal cases, when requested to do so by the parties." CrR 17.2. The settlement judge cannot "preside over any aspect of the case, other than facilitation of a voluntary settlement." CrR 17.2(b). Additionally, the settlement judge cannot "communicate anything regarding the status or substance of the settlement discussions to the trial judge, except to notify the judge of a settlement." *Id*.

Although the Southern District of California settlement procedure rule in place when *Scolari* was decided differs from the Local Rule 17.2, the rules have many of the same features. *See Scolari*, 72 F.3d at 753 Ex. A. Like the Southern District rule, Local Rule 17.2 forbids the settlement judge from communicating with the presiding judge about the status or substance of

the settlement discussions. Under both Local Rule 17.2 and the Southern District rule, the presiding judge is aware that the parties are engaging in plea negotiations. *Id*. In fact, under the Southern District rule, the *presiding judge asks* the parties if they desire a settlement conference. *Id*. (emphasis added). Under Local Rule 17.2, on the other hand, the *parties must request* a settlement conference before the presiding judge contacts a settlement judge. *Id*.

Additionally, Local Rule 17.2 does not offend the policy rationale for prohibiting "the court" from engaging in plea negotiations. The Ninth Circuit has illuminated three main policy reasons behind Rule 11. *United States v. Bruce*, 976 F.2d 552, 556 (9th Cir. 1992) (concluding that the judge violated Rule 11 when he made comments during a hearing that reflected his desire for the defendant to make a plea instead of facing a life sentence at sentencing). First, "[s]uch participation is prohibited because judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement." *Id*. Second, "[t]he rule is based on the sound principle that the interest of justice are best served if the judge remains aloof from all discussion preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any questions or suspicion when it becomes his duty to impose sentence." *Id*. (citing *United States v. Werker*, 535 F.2d 198, 203 (2nd Cir.), *cert. denied*, 429 U.S. 926 (1976)). Finally, "Rule 11 bars judicial participation in plea discussions in order to preserve the judge's impartiality *after* negotiations are completed." *Id*. at 557.

All of the policy rationales offered for Rule 11 contemplate only that the presiding judge would be coercive during plea negotiations. Under the local rule, the presiding judge remains aloof from all discussions during the plea negotiations because the presiding judge is unaware of the content of the discussions. This type of screening is common in the legal world, and there is

no reason to think that it has been ineffective. Indeed, there is no allegation that Judge Martinez violated any confidentiality or in any way acted improperly.[8] Additionally, because the presiding judge does not "advocate" for a specific outcome, the presiding judge can remain impartial after the negotiations are completed.

Finally, several policy reasons actually support the local rule. Even in this case, Mondragon's counsel agreed during oral argument that the judge's participation is for the benefit of the defendant, not the government. In general, the Court is unaware of any other defendant or defense counsel ever objecting to Local Rule 17.2. The settlement procedure allows defendants to voluntarily explore settlements with help from the watchful eye of the judiciary, and, at the same time, the procedure avoids compromising the integrity of the court or the impartiality of the presiding judge. Therefore, Local Rule 17.2 does not violate Rule 11.

Because there has been no violation of Rule 11, Mondragon's "per se judicial goading" argument fails. Additionally, Mondragon has not made any specific allegation of judicial goading from either Judge Settle or Judge Martinez. Mondragon requested the settlement conference and specifically requested Judge Martinez's participation. There is no basis for the claim that Mondragon was goaded into a mistrial. Even if Local Rule 17.2 did violate Rule 11, the Court is not convinced that it would amount to the judicial goading required for Mondragon's consent to be invalid. As the Ninth Circuit has noted, "mere bad faith conduct or harassment" is not enough—the government's conduct must intentionally goad the defendant into moving for a mistrial. At most, the Court and the Government accommodated Mondragon's own request—there is no evidence whatsoever of intentional goading.

**B. Prosecutorial Vindictiveness**

---

[8] To this Court's knowledge, there has never been any allegation of a settlement judge violating confidentiality or otherwise acting improperly during a settlement conference.

If the government files charges against a defendant to penalize him for exercising a protected statutory or constitutional right, the government violates the defendant's right to due process of law. *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). There are two ways to establish prosecutorial vindictiveness: (1) the defendant may produce direct evidence of a prosecutor's punitive motivation or (2) a defendant is entitled to the presumption of vindictiveness if he can show that the charges were filed because he "exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id*. "The presumption [of vindictiveness] applies only to the extent it reflects the very real likelihood of actual vindictiveness." *United States v. Gellegos-Curial*, 681 F.2d 1164 (9th Cir. 1982). Generally, to establish the presumption, a defendant must demonstrate "a *reasonable likelihood* that the government would not have brought" the new charges without the defendant electing to pursue a protected right. *Jenkins*, 504 F.3d at 700.

Mondragon argues that he is entitled to a presumption of vindictiveness because he exercised a protected right to appeal a Rule 11 violation. He claims that since he won the appeal, the Government's Second Superseding Indictment creates the appearance of vindictiveness.

The Government responds that Mondragon is not entitled to the presumption of vindictiveness because the new charges are not more severe than the earlier charges. The conspiracy charge is of the same severity (up to a life sentence) and the premises charge is less severe, though it does add a point to Mondragon's guideline range. However, these charges allow for additional imprisonment, a longer period of supervised release, and a higher fine. Although the Government argues that the Court often does not follow the guideline range in drug cases, that argument does not address whether the Government filed more severe charges. *See United States v. Motley*, 655 F.2d 186, 189 ("Once the government has created an appearance of

vindictiveness, it cannot by its own later self-restraint cure the chilling effect of its original action.").

The Government also argues that Mondragon is not entitled to the presumption because he did not in fact win the appeal, and he breached his plea agreement. The issue is whether Mondragon exercised a protected right when he appealed. Even if a defendant enters an appeal waiver, a defendant has a right to appeal a Rule 11 violation. *See generally United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007). If the procedure leading to the plea agreement renders the agreement unintelligently entered, the defendant can appeal despite the waiver. *Id*. It does not matter that the Government is technically correct in its assertion that Mondragon did not win on appeal.[9] Mondragon received the relief he request. Having established that Mondragon exercised a protected right, the unique circumstances that led to the filing of new charges in this case establish the presumption of vindictiveness.

Although the plea bargain contemplates that the Government might file additional charges if Mondragon breaches the plea, that is not dispositive. It is true that the Government could have added these charges any time prior to trial. *See United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996) (concluding that the "prosecutors may threaten additional charges and may carry through on this threat," and that bringing additional charges after failed plea negotiations "alone does not violate a defendant's due process rights, nor does it create a presumption of vindictiveness"). However, the rule against prosecutorial vindictiveness addresses the appearance of vindictiveness in order to "prevent chilling of the exercise of rights by other defendants in the future." *United States v. Motley*, 655 F.2d 186, 188 (9th Cir. 1981).

---

[9] As discussed above, Rule 17.2 does not violate Rule 11. That means that, on the merits, Mondragon did not win the appeal. If the issue had gone to the merits, then the plea would have been seen as valid and the Government would not have sought any additional charges because Mondragon would be in jail for twelve years pursuant to the original plea agreement.

The unique facts of this case—specifically, the parties were at trial, there has been no new discovery, and the charges were filed right after remand when the parties were in substantially the same position—create the appearance of vindictiveness.

The Court recognizes that the factual circumstances of this case make it unique. But those circumstances also give rise to the appearance of vindictiveness. First, the Government was in trial, proceeding on its Superseding Indictment when Mondragon pled. The Government had already reviewed its case and added additional charges. The Government decided to go to trial with the Superseding Indictment. In all of Mondragon's many plea discussions, the Government never threatened to add a premises charge or the conspiracy charge if he did not plea—despite apparently having the evidence necessary to bring those charges. Mondragon exercised a right to challenge the validity of the plea bargain. The Ninth Circuit remanded the case and the parties were in essentially the same position that they were in before Mondragon pled. There was no new evidence that would lead to the addition of the charges. There was no reason to add the charges in order to ensure that the Government had enough evidence against Mondragon. *See Jenkins*, 504 F.3d at 700 (noting that the government had more than enough evidence to proceed with their theory of the case without the additional charges).

The Court does not suggest that the same appearance of vindictiveness would arise in a different case where a plea deal is entered and the prisoner appeals under Rule 11, and it does not suggest that the prosecutor was actually vindictive. Only the unique factual circumstances and the timing of the new counts give rise to the presumption in this case.

Once a presumption is established, the government can overcome the presumption of vindictiveness with "objective evidence justifying the prosecutor's actions." *Id*. at 701. The Government offers three justifications for the additional counts: (1) a new prosecutor filed the

Second Superseding Indictment; (2) the Government was fulfilling its contractual right; and (3) Mondragon knew that the Government did not agree to refrain from filing additional charges on remand.

First, the Government argues that the fact that a new prosecutor came onto the case objectively justifies the two additional charges. However, even if in general a new prosecutor would justify a new indictment, it is not enough in this case. Although this is the first time the prosecutor took part in the Indictment against Mondragon, he joined the case six weeks before trial and was set to be co-counsel at trial. The prosecutor has not pointed to any objective reason for his decision to add two counts, he has not explained how these counts help him prove his case at trial, or why these counts may be easier to prove than the other counts against Mondragon.

Second, the Government argues that it is not being vindictive; it is fulfilling a contractual right contemplated in the plea agreement. However, again, this argument misses the point. In a normal case, the Government's argument might be persuasive. Here, the Government was at trial with this Superseding Indictment. The parties positions did not change between the time the parties went to trial and the time the Ninth Circuit vacated the plea and remanded. There is no new evidence, and there is no evidence that the Government ever threatened to bring these charges during plea negotiations. Fulfilling contractual obligations alone simply cannot overcome the presumption of vindictiveness in this case.

Finally, the Government offers an e-mail to show that Mondragon was aware that additional charges might be filed. (Dkt. #177, Attach. 2.) In the e-mail, the Government refused to assure Mondragon that no new charges would be filed. But the e-mail states, "I am not suggesting that there [would be new charges], since new charges would likely bring a charge of

vindictive prosecution and a new round of motions." (*Id.*) The e-mail suggests that the Government was aware that any new charges would appear vindictive, and that the Government was willing to imply that charges might not be filed in order to the get the case remanded. Although it is unlikely that the Government intentionally misled anyone, the e-mail does little to cure the appearance of vindictiveness.

The Court therefore concludes that the justifications offered by the government are insufficient to dispel the appearance of vindictiveness created by the timing of the new charges. The conspiracy count and the premises count will be dismissed. The Court leaves intact the other counts in the Indictment.

### III.  CONCLUSION

Defendant Mondragon's Motion to Dismiss on Double Jeopardy Grounds [Dkt. #173] is DENIED.

Defendant Mondragon's Motion to Dismiss the Second Superseding Indictment [Dkt. #174]. is GRANTED in part. Count 1 and Count 7 are dismissed, the rest of the Second Superseding Indictment remains the same.

IT IS SO ORDERED.

DATED this 16th day of November, 2012

　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Ronald B. Leighton
　　　　　　　　　　　　　　　　　　　　　　　　　Ronald B. Leighton
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge